**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LOUISIANA MACHINERY COMPANY,
LLC., d/b/a RESOURCE POWER GROUP,

        Plaintiff,

vs.                                              Case No. 3:09-cv-957-J-32JRK

DEVON SHIPPING, INC., *in personam*,
and M/V GREY SHARK, *in rem*,

        Defendants.

## ORDER

This case is before the Court on Resource Power Group's Motion to Dismiss Counterclaim (Doc. 23). Devon Shipping, Inc. filed an opposition to the motion (Doc. 26).

**I. Background**[1]

In August 2008, Devon Shipping, Inc. (Devon) requested Resource Power Group (Resource) overhaul the starboard engine on Devon's 320-foot carrier, M/V Grey Shark. Devon made an advance payment of $30,000.00 for the repairs which were subsequently completed. Resource sent Devon an invoice for the repairs totaling $93,667.52, which Devon found excessive and for which it requested backup documentation.

In the meantime, M/V Grey Shark's chief engineer found the starboard engine's performance was poor despite the recent overhaul. As a result, M/V Grey Shark required a second overhaul of the starboard engine in the Spring of 2009. While M/V Grey Shark was

---

[1]These facts are derived from Devon Shipping, Inc.'s Answer, Affirmative Defenses and Counterclaim (Doc. 20).

laid up for the second overhaul, Devon claims to have discovered that Resource's overhaul was faulty. Consequently, Devon paid (apparently a third party) for Resource's repairs to be corrected, incurring expenses in the form of additional parts, labor, and lost charter hires.

Resource has since filed suit against Devon for the remaining balance of the invoiced repairs plus prejudgment interest, taxable costs, and attorneys' fees . Devon has asserted the following counts in its counterclaim: negligence, breach of warranty of workmanlike performance, and breach of implied warranty. Resource has filed a motion to dismiss all three counts of Devon's counterclaim.

## II. **Standard of Review and Applicable Law**

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the non-moving party's pleading as true and consider the allegations in the light most favorable to the non-moving party. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court may dismiss a claim where a party fails to plead facts that make the claim facially plausible. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)). A claim is facially plausible where the Court can make a reasonable inference based on the facts pled that the opposing party is liable for the alleged misconduct. Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Maritime law applies to actions involving vessel repairs, including engine repairs. Diesel "Repower", Inc. v. Islander Invs., Ltd., 271 F.3d 1318, 1322-23 (11th Cir. 2001) (citing

New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 99 (1922)). Because Resource performed engine repairs on M/V Grey Shark for Devon, the parties agree that maritime law applies in this case.

### III. Analysis

#### A. Count I - Negligence

Resource seeks dismissal of Devon's counterclaim for negligence on the grounds that the economic loss rule precludes a claim in tort law which is properly based in contract law. The key case in maritime law accepting the economic loss rule is East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). There, the Supreme Court held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." Id. at 871. Breach of contract and breach of warranty actions exist for the purpose of protecting contracting parties against a failure in a contract. Id. at 872. So, where a product, i.e. object of a contract, causes damage only to itself, an aggrieved party should use breach of contract and warranty actions. Id. In East River, the Court recognized that a limitation on tort law claims was necessary to prevent "contract law from [drowning] in a sea of tort." Id. at 866.

This economic loss rule has since been extended to maritime cases involving parties other than manufacturers, so that, in general, "a tort action may not lie where the basis for liability arises from a contract." Meridian Bulk Carriers, Ltd. v. Kinder Morgan Bulk Terminals, Inc., No. 8:07-CV-1422-T-33TGW, 2009 WL 2180582, at *9 (M.D. Fla. July 22, 2009). See also Geico Cas. Co. v. Arce, 333 F. App'x 396, 397 (11th Cir. 2009) (applying Florida law); Nathaniel Shipping, Inc. v. Gen. Elec. Co., 932 F.2d 366, 368 (5th Cir. 1991)

(applying maritime law).

Turning to the case at hand, Devon admitted that "the 'object of the contract' was the overhaul of the vessel's starboard engine and the provision of certain parts." (Doc. 20, at 6.) Consequently, Resource had no duty in tort law to prevent the overhauled engine from "injuring itself"; Resource cannot be held liable in tort for damages from the failure of the starboard engine overhaul. Devon has only lost the object of its bargain and therefore contract law is well suited to address Devon's claims. Therefore, Devon has failed to plead facts which would support Resource's liability under negligence.

The Court does recognize Devon provided additional facts in its Memorandum in Opposition to Motion to Dismiss Counterclaim (Doc. 26), in which Devon identifies the specific engine components which Devon paid for in the engine overhaul. Devon then argues that these specific components are the only parts affected by the economic loss rule, and the damage to other parts of the engine constitute other property for which Resource should be liable in negligence.

For the purposes of deciding the motion to dismiss, the Court cannot consider additional facts outside of Devon's Answer, Affirmative Defenses and Counterclaim (Doc. 20). However, the Court finds the additional facts Devon provided in its Memorandum, even if considered, would not have brought the Court to a different decision. Resource is correct that a cause of action in tort law may exist, despite a contractual relationship, where a party incurs damage to other property, meaning property other than the product itself. East River 476 U.S. at 866-67. However, the Supreme Court addressed the very argument which Devon makes before this Court in its East River decision. There, the claim was based on

4

defective components of a turbine which ultimately damaged the turbine itself. Id. at 867. The Supreme Court held a turbine is sold as an integrated package, incorporating all of its components to make up one single product. Id. The Court stated that "[s]ince all but the very simplest of machines have component parts, a contrary holding would require a finding of 'property damage' in virtually every case where a product damages itself." Id. (quoting N. Power & Eng'g Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981)).

Here, Devon is asking the Court to separate the starboard engine into all of its component parts, contrary to East River. Devon's negligence counterclaim is barred by the economic loss rule.

### B. Count II - Breach of Warranty of Workmanlike Performance & Count III - Breach of Implied Warranty

Resource also seeks dismissal of Devon's counterclaim for breach of warranty of workmanlike performance (WWLP) and breach of implied warranty. As to the WWLP claim, Resource argues that the warranty arises in tort law and therefore is barred by the economic loss rule, and that the warranty only applies to cases involving personal injury, not property damage.

Resource has failed to advance any argument in support of its first ground for dismissal. Regardless, the WWLP is a breach of warranty claim based in contract law. Garner v. Cities Serv. Tankers Corp., 456 F.2d 476, 481 (5th Cir. 1972). See also Ryan Stevedoring Co. V. Pan-Atlantic S.S. Corp., 350 U.S. 124, 134 (1956) (applying the WWLP to stevedoring contracts and holding the WWLP is "not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's

5

stevedoring contract.") The economic loss doctrine does not preclude Devon's claim for breach of WWLP.

Turning to Resource's second grounds for dismissal (that the WWLP only applies to cases involving personal injury), admiralty law recognizes that a WWLP exists in maritime service contracts. Ryan Stevedoring Co., 350 U.S. at 133-34; Vierling v. Celebrity Cruises, Inc., 339 F.3d 1309, 1315 (11th Cir. 2003). In Ryan Stevedoring Co., a shipowner sought indemnification from a stevedoring contractor when the shipowner had to pay one of the contractor's employees for an injury incurred while the contractor was in control of the ship. 350 U.S. at 126-27. The Supreme Court found that the stevedore contract contained a WWLP, which was an implied obligation that the contract would be performed competently and safely. Id. at 133. Furthermore, the Supreme Court held the stevedoring contractor must indemnify the shipowner for the contractor's breach of the WWLP regardless of the shipowner's fault. Id. at 133-34.

Resource argues the holding in Ryan Stevedoring Co. has subsequently been limited in application by legislation and succeeding court decisions to the point that Ryan Stevedoring Co. does not apply to cases involving only property damage. The Eleventh Circuit recognized a limitation in Ryan Stevedoring Co., holding in its decision in Smith & Kelly Co. v. S/S Concordia Tadj, 718 F.2d 1022, 1027 n.4 (11th Cir. 1983), that amendments to the Longshoremen's and Harbor Workers' Compensation Act effectively nullified the Supreme Court's decision as to indemnity under Ryan Stevedoring Co.. However, the Eleventh Circuit stated that the Supreme Court's recognition of an implied WWLP was still good law. Id. ("'The Ryan doctrine ... includes two facets: an implied undertaking by a

6

stevedore to render workmanlike performance and the stevedore's duty to indemnify the owner for liability arising out of its breach.' The first of these principles retains its vitality." Id. (citation omitted)).

Additionally, in Ryan Stevedoring Co., the Supreme Court equated the WWLP to "a manufacturer's warranty of the soundness of its manufactured product." 350 U.S. at 133-34. Since Ryan Stevedoring Co., courts have applied the WWLP to cases involving property damage. See Fairmont Shipping Corp. v. Chevron Int'l Oil Co., 1975 A.M.C. 261 (2d Cir. 1975) (holding tug boat operators liable for breach of WWLP where the breach resulted in damage to a ship which ran aground); Liberty Belle Ltd. P'ship v. M.I.T. Marine Elec. Corp., No. 88-1051-CIV-3-16, 1991 WL 201633, at *3 (M.D. Fla. May 9, 1991) (holding a ship repairer liable for breach of WWLP where the improper repairs resulted in additional repair costs to the shipowner). Furthermore, the Eleventh Circuit has defined the WWLP as "an implied promise to perform . . . services with reasonable care, skill, and safety." Vierling, 339 F.3d at 1315. Here, Devon has pleaded sufficient facts that Resource implicitly promised to repair M/V Grey Shark's engine with reasonable care, skill, and safety and Resource subsequently failed to satisfy that promise, resulting in a breach of WWLP.

While the parties did not address arguments specific to Count III of Devon's counterclaim for breach of implied warranty, the Court views this claim as an alternative pleading to Count II because both claims arise out of the alleged breach of performance by Resource. As a result, the Court finds that Count III states a cause of action.

Accordingly, it is hereby

**ORDERED**:

1. Resource Power Group's Motion to Dismiss (Doc. 23) is **GRANTED** as to Count I of Devon Shipping, Inc.'s counterclaim, thereby dismissing Count I with prejudice, and **DENIED** as to Counts II and III of Devon Shipping, Inc.'s counterclaim. The clerk shall withhold entry of judgment on Count I until further order of the Court.

2. Resource Power Group shall file an answer to Counts II and III of Devon Shipping, Inc.'s counterclaim no later than **May 7, 2010**.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of April, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

sec
Copies:

counsel of record